# Heidrick v. Guaranty Safe Deposit & Trust Co., Appellant.

*Contracts—Stakeholders—Ownership of fund—Case for jury.*

In an action to recover a sum of money alleged to have been received by defendant to the use of plaintiff, it appeared that defendant had been plaintiff's surety on a bond, and that plaintiff had mortgaged certain lands to defendant to indemnify it against

loss. In order to facilitate the sale of certain bonds secured by a mortgage on the same land, plaintiff desired defendant to release said land from the first mortgage held by it, which defendant did upon payment to it of the sum of money in controversy. There was evidence that the money had been realized from the sale of bonds belonging to plaintiff. The defendant claimed the fund by assignment from a third person, who claimed to be the owner thereof. The court admitted evidence to show that the fund was the property of the plaintiff, and submitted the question of the ownership thereof to the jury who found a verdict for plaintiff, upon which judgment was subsequently entered. *Held,* no error.

Argued Oct. 16, 1913. Appeal, No. 126, Oct. T., 1913, by defendant, from judgment of C. P. Butler Co., Sept. T., 1912, No. 57, on verdict for plaintiff in case of Charles F. Heidrick v. The Guaranty Safe Deposit and Trust Co. Before FELL, C. J., BROWN, MESTREZAT, ELKIN and MOSCHZISKER, JJ. Affirmed.

Assumpsit for money received by defendant to plaintiff's use. Before GALBREATH, P. J.

The facts appear by the opinion of the Supreme Court.

Verdict for plaintiff for $19,325.11, and judgment thereon. Defendant appealed.

*Errors assigned* were various instructions to the jury.

*T. C. Campbell,* with him *A. E. Reiber,* for appellant.

*A. L. Cole,* with him *John B. Greer,* and *Thomas H. Greer,* for appellee.

OPINION BY MR. JUSTICE ELKIN, January 5, 1914:

While the facts of this case are complicated the legal questions involved are few and simple. The case turns on the controverted question of fact, Who was the owner of the fund paid to the trust company for the purpose of securing a release of the mortgage held by it as security against possible loss on its contract of suretyship with the Pennsylvania Railroad Company? Defendant

was surety on the bond of Heidrick to the railroad company and took first mortgage on certain lands to indemnify itself against loss. The defendant trust company had no other interest in the transactions which gave rise to the present controversy at that time. It is too clear for argument that when the trust company was released as surety on the bond to the railroad company, it ceased to have any further interest in the matters connected with the original transaction. In order to facilitate the negotiations for the sale of certain bonds held in different proportions by Queen and Heidrick, it was found necessary to secure a release of the first mortgage held by the defendant on lands of Heidrick. The defendant was not willing to satisfy its mortgage until the railroad company released it from its obligation on the bond as surety. Heidrick undertook to secure this release and succeeded. This would seem to be an end to the matter so far as the trust company was concerned. It had no further obligation on the bond, and at most could only be considered as stakeholder of the fund in dispute at the time the mortgage was satisfied and the railroad company gave its release. In order to secure the release of the mortgage Heidrick undertook to raise the funds necessary to secure the balance due the railroad company. This was done by the sale of bonds held by the Windsor Trust Company of New York as trustee for the bondholders. Heidrick directed defendant to draw a draft upon Queen at the Windsor Trust Company for $22,500 and attach to the draft a release of the lien of its first mortgage. This was done and the money was paid to defendant and held by it. Subsequently Heidrick procured a release from the railroad company, and the defendant having no further responsibility on its bond as surety, he demanded the funds deposited in the trust company, payment of which was refused on the ground that Queen also claimed the fund. Payment having been refused this suit was brought. The defendant, asserting that it subsequently took an assignment

of the fund from Queen, undertook to make his defense
at the trial. The learned trial judge allowed the widest
latitude to the defendant in the introduction of testi-
mony relating to the negotiations between Queen and
Heidrick. The question of the ownership of the fund
was submitted to the jury with full and adequate in-
structions in relation to every phase of the controversy.
The jury were instructed that the ownership of the fund
depended very largely upon who was the owner of the
bonds out of which the money was realized. The charge
covered every branch of the case and we fail to see how
appellant can justly complain about the instructions of
the learned trial judge. Something is said about the
burden of proof and the necessity of making out a prima
facie case. Heidrick was the owner of the land mort-
gaged for the payment of the bond. He conveyed the
land to the coal company and took the bonds and capital
stock in payment. In his original arrangement with
Queen, Heidrick took $254,000 of the bonds and Queen
$246,000. The bonds which produced the fund in con-
troversy were a part of the $254,000 allotted to Heidrick.
He, therefore, starts with the undisputed ownership of
the bonds out of which the fund was realized. He agreed
to sell his bonds and stock to Queen for $37,500,—or at
least that was his contention, and the jury must have so
found—and to deliver them upon payment of certain
drafts, of which the draft drawn by the defendant at the
instance of Heidrick was one. The fund was realized by
the payment of this draft. In his letter to defendant
Heidrick directed the proceeds of the draft to be de-
posited to his account. Defendant received the proceeds
of the draft as directed by Heidrick and this is the fund
in dispute. The jury found the facts in favor of Heid-
rick and we do not see upon what theory the defendant
can claim that the trial judge imposed any undue bur-
den upon it. Certainly these facts make out a prima
facie case for Heidrick. When Queen paid the draft he
imposed no condition as to the disposition of the money,

and this left the bank under the directions of Heidrick as to the fund in question. After that time, and before it took an assignment of the claim of Queen, defendant had no interest in the fund and was bound by the direction of the depositor. We have examined this case with care and cannot see how in any of its aspects appellant can complain of the disposition made of it in the court below. Defendant was permitted to set up every contention Queen could have asserted in the trial of the cause between himself and Heidrick. The case depended upon the facts and the jury by their verdict found the facts in favor of the plaintiff. This should be an end of the case as we find no reversible error in this record.

Judgment affirmed.